Apionishev v. Dr. Kalderon, Columbia University

Dr. Sergey Apionishev (Plaintiff)
320 Empire Blvd., Apt. 6E
Brooklyn, N.Y. 11225

Judge Scheindlin
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

09 Civ 6471 (SAS)
10 Civ 9287



RE: Sergey Apionishev v. Dr. Kalderon and Columbia University in The City Of New York.
Index No. 09 Civ. 6471 related cases are: 10 Civ. 7742, and 10 Civ. 9287 (*Pro Se*)

Dear Judge Scheindlin,

Because you recommended not to file another law suit against Columbia University and Dr. Kalderon during the conference on March 31, 2011, I will not file another, fourth law suit against Defendants at this time, even though I have received Letter of Rights to Sue from Equal Employment Opportunity Commission on March 11, 2011 (Exhibit 5).

I will describe clearly how Defendants retaliated against me and currently still retaliating against me in respect to providing derogatory or incomplete references. Because at this time I am not filing another law suit I strongly urge Court to take this latest Act of retaliation by Defendants seriously and to file this letter as a part of my entire Complaint. If procedures require so I will amend my complaint accordingly if I am recommended to do so by the Court. Because of Defendant's wrongful actions my entire life-long career was destroyed, and my entire life was ruined. The United States awarded me US citizenship for my achievements in Sciences and for extraordinary abilities in order for me to continue my work in cancer research, but because of adverse actions by the Defendants, who confessed of retaliation, I am completely crashed, destroyed and unable to work for the good of this society, to fight cancer and other genetic disorders. In addition, I was left without severance pay when I was fired after I complained of harassment, I was ill and was deprived access to health insurance because of wrongful termination in 2004. I became homeless and until now I have to reside in the homeless shelter system provided by New York City for homeless people. I survive solely on Public Assistance such as Food Stamps and $00.oo a month in cash assistant because my entire Social

*[Handwritten note:] Plaintiff's request to toll the statute of limitations with respect to any additional claims is DENIED. So Ordered. [signature] 4/18/11*

Kalderon confessed in an e-mail (dated November 30, 2007) that he wrote derogatory Letters of Recommendation to my potential employers whenever I applied for a new job. Dr. Kalderon confessed that he retaliated because I complained to Columbia University Officials of harassment and discrimination, I quote: "*I did it for two reasons...I did find it very stressful to deal with you in the lab (for instance being told often how unfair my dealings were,....accusing me of harassment to the University....*" (Exhibit 3). In the same e-mail Dr. Kalderon threatened me to continue slandering me on the phone with my potential employers. One of my potential employers has reveled to me that Dr.Kalderon slandered me on the phone and thus deliberately sabotaged my job interview. Based on this information I filed a complaint with EEOC in August 2008. And in 2009 I filed a Law Suit in Federal Court based on EEOC determination. I did not know that I could file in Court without a Letter Of Rights from EEOC.

    3. Regardless of ongoing investigation by EEOC in 2008, my ex-supervisor was preventing me from obtaining positions in Science, at Universities and Colleges where I applied for work as professor and a scientist. There were several colleges that considered me for the position as a scientist but declined my application upon receiving negative references from Dr. Kalderon of Columbia University.

    4. Most Recent retaliation by Dr. Kalderon and Columbia University occurred on March 2nd 2011. Around February 28th 2011, I asked Defendants (outside Court's proceedings) to send non-retaliatory letters of recommendation to my potential employers because I resumed my search for work. Dr. Kalderon and Columbia University refused to provide me with complete professional recommendations which usually consist of 1) A letter of recommendation sent to potential employers; 2) Oral recommendations over the phone with potential employers. Defendant sent to me a final copy of proposed letter of recommendation and issued a statement in which he completely refused to provide any oral references. First, I received an e-mail from Dr. Kalderon in which he demanded that I agree that his letters should be viewed as non-discriminatory and that lack of oral references will be considered non-discriminatory. On the same day I received an Official Statement from Columbia University strongly supporting Dr. Kalderon's retaliatory position.

    5. First, Dr. Kalderon and Columbia University wrote a very limited, descriptive Letter of Reference, that minimizes my chances in obtaining positions as a research scientist, and, second, Columbia strongly refused to provide any oral recommendations to my potential employers in retaliation, because I complained to EEOC and to this Court. (See e-mail communication by Dr.

Kalderon as of March 2, 2011 (Exhibit 1, lines 1 to 5)). Dr. Kalderon, was clearly demanding from Columbia University to make me, Plaintiff to consent, to agree that his proposed letter of recommendation should be considerate non-discriminatory and that lack of further oral references should be considerate non-discriminatory <u>by me, the Plaintiff</u>. Dr. Kalderon and Columbia University are fully aware that such act is retaliatory but wanted me, Plaintiff, to accept terms and conditions of such bad behavior, I quote Dr. Kalderon: "*I am not the lawyer here but I would be asking not only that Sergey would like the letter sent but that he explicitly acknowledges that there is no discrimination in this letter and that it provides sufficient information, so that no telephone calls (or similar) are necessary or desirable (and that absence of such information communication will not be considered discriminatory*". It is clear from his demanding letter that Dr. Kalderon knows that his behavior is still retaliatory but he strongly believes that once I, the Plaintiff, acknowledge and accept his deliberately retaliatory act as a "non-retaliatory" or "non-discriminatory act", he will be able to continue this wrongful act legally. I did NOT accept Dr. Kalderon's proposed Letter and I did not accept other terms.

Based on the above demanding letter from Dr. Kalderon, Columbia University issued an Official Letter as of March 2, 2011 (see Exhibit 2, lines 15,16,17 underlined) supporting Dr. Kalderon and stated the following:"....*while Dr. Kalderon will agree to wright.... a letter, he will not agree to any telephone calls with third parties or oral references, <u>because you have distorted them in the past</u>*." The last (underlined by me) phrase in this sentence means that because I discovered and complained to EEOC and to Federal Court of Dr. Kalderon's negative slandering phone references by which he sabotaged my job interviews, Defendants, instead of agreeing to provide positive oral references, are refusing to provide <u>any</u> oral references whatsoever. This communication took place outside Court's proceedings and it is an act of retaliation as the letter clearly stated "<u>*because you have distorted them* [oral references] *in the past*</u>". Defendant provided a clear reason for its behavior – because I complained. Because of this position by the Defendants, I had to stop my job search. Please take a notice that this was not a simple personal communication between Plaintiff and defendant's attorney Mr. Toback. Usually our personal communication is done via e-mail and any such communication always obvious from it context and it is usually about dates, events, documents being produced etc. as in Exhibit 4. Instead, this last letter as of March 3rd 2011, is a clear final statement, it is an Official Statement by Trustees of Columbia University in the City of New York, Defendant's final position towards me, and not a simple e-mail communication between me and Mr. Toback.

4

I also lost prospective wages, because it will be very difficult or almost impossible for me to obtain a position in Academia or Pharmaceutical industry in years to come because my reputation was severely damaged by Dr. Kalderon. I, therefore, will be loosing prospective wages in years 2012, 2013, 2014, 2015 and 2016. Psychological damages include my fear of potential Employers who may also discriminate against me the same way as Defendants and other complecations associated with psychological damages. My life long career was permanently damaged. I will never be able to achieve my career goals as a scientist. My retirement as a person of Academia, as a professor, was destroyed. My reputation as a scientist was severely damaged. I lost my qualifications due to lack of opportunity to update and maintain my professional skills.

## CLAIM FOR RELIEF

9. Back pay, front pay, cost of this action, punitive damages and other relief allowed by law. I could have earned ($51,500), ($53,000), ($54,500), ($56,000), ($57,500) and ($59,000), ($60,000) with approximately 2.5% raise each year in years 2005, 2006, 2007, 2008, 2009, 2010, and 2011 respectfully. Total of Three hundred thousand thirty one thousand dollars ($391,000). Accordingly, this number should be doubled because if I were to work in highly competitive Pharmaceutical industry, my potential salary could be much higher per annum, starting approximately with 80,000 to 90,000 dollars per year, therefore Defendants must pay $782,000 for lost wages. In addition, Defendant must pay compensation for lost prospective wages, if I were to work in Academia from 2012 to 2016: ($61,500), ($63,000), ($64,500), ($66,000) with approximately 2.5% raise each year. Total lost prospective wages: $255,000. If I were to work in Pharmaceutical industries this number should be doubled to $500,000. Total loss (prospective and historical wages) is **$1,282,000.**
In addition, I will have to go to College to study again in order to update my professional skills and get back to work, which are additional expenses and time of my life. I also forever lost my reasonable retirement compensation as a Professor. Therefore, these damages must be quadrupled **$1,282,000X4=$5,128,000**

10. Punitive damages: Defendant caused me serious emotional distress and destroyed my entire life by means of libel and slander. My reputation in Science and Academia is destroyed forever. I ask Court to punish Defendants and award Plaintiff punitive damages in the amount of **$10,000,000** ( Ten Million dollars) or more as Court considers to be just and proper, because my entire life was destroyed.

11. In addition, Dr. Kalderon and Columbia University must stop libel and slander and to

provide Plaintiff with excellent and non-retaliatory letters of recommendations together with excellent oral references.

12. In addition, Defendant is liable for Attorney's fees and all costs for this action of $100,000. In addition, according to New York City and New York State Human Rights Laws, Dr. Kalderon, the supervisor, is personally liable for injury, damages and suffering inflicted upon Plaintiff. Dr. Kalderon must be held liable and pay for any applicable Attorney's Fees, costs of this action, and punitive damages in the amounts of $500,000. Dr. Kalderon had powers more just as a supervisor, he personally received Federal Funds from National Institute of Health and National Science Foundation, he is personally responsible for distributing these funds and hiring procedures. Therefore, Dr. Kalderon is considered to be an employer within Columbia University, who in tern carries voracious liability for all illegal actions committed by Dr. Kalderon.

Therefore, Plaintiff respectfully asking this Court to toll statutes of limitations because the Defendant lost Title VII and other statutes of limitations defenses and because of equitable tolling doctrine of unclean hands, and to provide relief sought by the Plaintiff as it deems just and proper, and to punish the Defendant appropriately. Defendant has ruined my entire professional career, my entire life, and Dr. Jenny of Yeshiva University as well Dr. Desplan of New York University, discriminated against me and aided to Defendants Columbia University and Dr. Kalderon's retaliation in July 2009.

Dated: April 1, 2011
  New York, New York

Sergey Apionishev
320 Empire Blvd., Apt. 6E
Brooklyn, New York 11225

Sworn before me on this
day of 6ᵗʰ April, 2011

LORRAINE SAMUELS-McLAMB
Notary Public, State of New York
No. 01SA6134180
Qualified in Queens County
Commission Expires 9/26/2013

7

# LIST OF EXHIBITS

1. E-mail communication from Dr. Kalderon to Plaintiff and to Columbia University Trustees

2. Official retaliatory statement issued by Columbia University and Trustees of Columbia University on March 2nd, 2011.

3. E-mail communication from Dr. Kalderon in which he confessed of Retaliation and threatened to sabotage my job interviews in future by slandering me on the phone while giving references.

4. Regular e-mail communication between Plaintiff and Attorney for Defendants, as compare to the Retaliatory Statement issued by Columbia University Trustees.

5. Notice of Suit Rights issued by EEOC on March 22, 2011 concerning retaliation that occurred on March 2, 2011.

🪟 **Windows Live**™   Hotmail (216)   Messenger   Office   Photos  |  MSN                Dr. Sergey A|

## Hotmail

New  |  Reply   Reply all   Forward  |  Delete   Junk   Sweep ▼   Mark as ▼   Move to ▼  |

**Inbox (216)**

### Re: Apionishev v Columbia         Back to messages  |

To see messages related to this one, group messages by conversation.

**Folders**

**Junk (4)**

Drafts (5)

Sent

**Deleted (20)**

newmail

**oldmail (1)**

New folder

| Daniel Kalderon   Add to contacts                3/02/11
| To amtatt@aol.com, sergey54@hotmail.com,...        Reply ▼

lines:

1. I am not the lawyer here but I would be asking not only that
2. Sergey would like the letter sent but that he explicitly
3. acknowledges that there is no discrimination in this letter and that
4. it provides sufficient information, so that no telephone calls (or
5. similar) are necessary or desirable (and that absence of such
6. informal communication will not be considered discriminatory).

As it is, it seems that Sergey could simply say he wants the letters sent (because he wants to use it to his legal advantage).

Dan

On Mar 2, 2011, at 11:28 AM, amtatt@aol.com wrote:

Please see attached.

Arthur M. Toback
TOBACK, BERNSTEIN & REISS, LLP
15 West 44 Street
12th. FL.
New York, NY 10036
212-869-2300
(Fax: 212-869-2303)
<Letter to Sergey Apionishev and Attachment (3-2-11).pdf>

**Quick views**

Flagged

**Photos (21)**

**Office docs (12)**

Shipping updates

**Messenger**

  7 invitations

  Loading...

Home

Contacts

Calendar

Dr. Daniel Kalderon
Dept. of Biological Sciences
Columbia University
1013 Fairchild, Mailbox 2445
1212 Amsterdam Ave.
New York, NY 10027

212-854-6469
ddk1@columbia.edu

3/5/2011

# TOBACK, BERNSTEIN & REISS LLP

15 WEST 44TH STREET
TWELFTH FLOOR
NEW YORK, NEW YORK 10036

(212) 869-2300
FACSIMILE: (212) 869-2303

ARTHUR M. TOBACK
BRIAN K. BERNSTEIN*
LEONARD S. REISS
*ALSO ADMITTED IN NJ

MARVIN J. HYMAN
OF COUNSEL

NEW JERSEY OFFICE

2050 CENTER AVENUE
SUITE 630, P.O. BOX 1160
FORT LEE, NEW JERSEY 07024

March 2, 2011

Dr. Sergey Apionishev
320 Empire Boulevard
Apartment 6E
Brooklyn, New York 11225

    Re:   *Sergey Apionishev v. Columbia University*

Dear Dr. Apionishev:

lines:

1  I am in receipt of your letter dated February 28, 2011. I remind you that in the Complaint
2  brought against Dr. Kalderon and Columbia in the Second Action (as well as against Columbia
3  in the First and Third Actions) one of your claims is that Dr. Kalderon is continuing to
4  discriminate against you through the sending of references. It is for that reason that the
5  Defendants reasonably believe that the sending of any further references at your request by Dr.
6  Kalderon will be labeled by you as a continuation of discrimination, if employment is then not
7  granted.

8  In my letter to you dated February 24, 2011, I stated that rather than sending reference
9  letters which you could then claim as a continuation of discrimination, Columbia would confirm
10 the dates of your employment, position held and salary information (if so desired), to any third
11 party you request. If, rather than such information, you still want a personal reference from Dr.
12 Kalderon, Columbia and Dr. Kalderon will agree that Dr. Kalderon will send a letter in the form
13 annexed hereto to a requested third party. You cannot dictate the contents of a recommendation
14 letter and Dr. Kalderon is comfortable sending the enclosed form of letter which is totally
15 accurate. I caution you that while <u>Dr. Kalderon will agree to write such letter, he will not agree</u>
16 <u>to any telephone calls with third parties or oral references</u>, <u>because you have distorted them in</u>
17 <u>the past.</u>

Please let me know if you wish written references in the form annexed hereto to be sent to any third party and then provide me with the name and address of such party.

Very truly yours,

[signature]
Arthur M. Toback

AMT:ap
cc:   Donna Fenn, Esq.
       Dr. Daniel Kalderon

# Re: PKA / Grh-Ci-lacZ paper

From: **Daniel Kalderon** (ddk1@columbia.edu)
Sent: Fri 11/30/07 11:26 PM
To: Sergey Apionishev, NYC (sergey54@hotmail.com)

Sergey,

I do not bear you any malice and would be happy for you to succeed in science and elsewhere. The last time I was asked for a letter is almost two years ago. I just looked it over and can tell you that it is very favorable without a single negative comment. It does have one short sentence saying that we did not have an ideal relationship (without any further explanation or attribution of our respective roles). I put this in for two reasons. One, it can be taken to amplify my prior comments (i.e. I am saying good things about you despite a non-ideal relationship). Two, it is honest and it would not be fair to the reader to omit the subject altogether. I did find it very stressful to deal with you in the lab (for instance being told often how unfair my dealings were, making salary demands, accusing me of harrassment to the University and taking teaching positions without checking with me in advance). Even since leaving the lab you have accused me of writing bad letters and so forth, when in fact I was giving fair and favorable opinions. If you insist, the only further change I could make is to omit the one sentence referred to above, but I will only do that if you assure me that you will try to have a relationship with a future employer that is significantly better than the one you had with me (by your own perceptions). If I am then asked specifically about social issues I cannot be dis-honest but I can still say that it was not entirely smooth sailing in a way that makes it ambiguous as to where any blame lies. I don't expect any thanks for this but it is time that you stop accusing me of deliberately impeding your progress, an accusation which is entirely false. The work you did here made a significant mark in understanding Hh signaling, with concrete papers to prove it, so that is what you should take from your time here, and that is what goes in my letter.

Dan

On Nov 30, 2007, at 4:47 PM, Sergey Apionishev, NYC wrote:

> Dear Dan,
>
> It happened that for several years and months now I am still unable to get any job in science. Now I know exactly that the letter of recommendation you wrote had very negative notes about our relationship, amd I know some other things. But this is not important. Well, as I said before, I dedicated and invested six years of my life in your lab, I did everything that was in my capacity to produce results under your direct supervision. I worked as hard as I possibly could to produce quality results. And this is what important. I came fully prepared for the work in your lab, so you did not have to train me. And as far as I know, we really never had any big disagreements on anything except me teaching at Barnard, going to Cold Spring Harbor, or me applying for a green card.
>
> In terms of the letter of recommendation, please, see if you can still find some true wisdom in you, and think about what really you want to say about our relationship if you chose so. Honestly, I do not think our relationship was bad at all, why would you even say so in a letter of recommendation for anybody anyway? So please... if you have a chance, please think about it. Revise the letter, it will make you feel better about yourself as a person, I suppose rather than, knowing day after day that you somewhat intentionally preventing someone from getting a job because of some lowkey remark in the letter. I do not think it is honest nor honorable for anyone to do so... Well, I don't want to go there, we all have bad times and good times. If you felt at a moment you had to do it, maybe that was not such a great time for you. But I hope time healed your prospectives on things and maybe from now you can look

# EXHIBIT 4.

(Two e-mail communications from Mr. Toback, attorney for Defendants)

## 1.

I am available on on all 4 of the suggested dates at 4:30. Let me know which works for the Court.

Arthur M. Toback
TOBACK, BERNSTEIN & REISS, LLP
15 West 44 Street
12th. FL.
New York, NY 10036
212-869-2300
(Fax: 212-869-2303)

---

## 2.

The form of letter that I sent to you earlier is completely accurate and Columbia is prepared to send it to all 3rd parties you provide to me. However, Columbia will, as a further consideration to you, make the following change to the letter.(see attached letter) and will send same to 3rd parties.. There will be no further changes.

Arthur M. Toback
TOBACK, BERNSTEIN & REISS, LLP
15 West 44 Street
12th. FL.
New York, NY 10036
212-869-2300
(Fax: 212-869-2303)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Sergey A. Apionishev
320 Empire Boulevard, Apt. 6E
Brooklyn, NY 11225

From: New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2011-01646 | Orfelino Genao, Investigator | (212) 336-3642 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

- **NOTICE OF SUIT RIGHTS** -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Elizabeth Grossman,
Acting District Director

3-22-11
*(Date Mailed)*

Enclosures(s)

cc: **COLUMBIA UNIVERSITY**
412 Low Memorial Library Mail, Code 4308
535 W. 116th St.
New York, NY 10027

Sergey Apionishev
320 Empire Blvd. 6E
Brooklyn NY. 11225

Pro Se Office
United States D. Court
Southern Distr. of NY.
500 Pearl St. R. 920
NY. 10007

# AFFIRMATION OF SERVICE

I, Sergey Apionishev, plaintiff in this case, under the penalty of pergery declaire that I personally delivered "Letter to Judge Scheindlin" to Defendants Columbia University and Yeshiva University whos address is 15W 44 ST. New York, NY. and 620 8th Avenue New York, NY. by personal ~~had~~ hand delivery on April 6th, 2011

New York, NY
April 6th, 2011

Sergey Apionishev
320 Empire 6E